IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

| | |
|---|---|
| OLAM AMERICAS, INC., <br><br>   Plaintiff <br><br> v. <br><br> GARDNER DENVER, INC.; <br> THE SHERMAN ENGINEERING <br> COMPANY; and <br> DOES 1-20, inclusive, <br><br>   Defendants. | Case No.   1:20-cv-03903 |

## COMPLAINT

## NATURE OF THE CASE

1. This case is about Defendants' failure to provide a reliable product, their concomitant failure to provide adequate support for their defective products, and the grievous financial consequences for their customers, including Plaintiff Olam Americas, Inc. ("Plaintiff" or "Olam").

2. Unless otherwise stated, the following facts and claims are based upon personal knowledge, investigation of counsel, and information and belief.

## PARTIES

3. Defendant Gardner Denver, Inc. ("Gardner Denver") is a corporation organized under the laws of Delaware with its principal place of business located at 222 East Erie Street, Suite 500, Milwaukee, Wisconsin 53202. Defendant Gardner Denver touts itself as a leading global provider of mission-critical flow creation and compression equipment and associated aftermarket parts, consumables, and services, which it sells across multiple attractive end-markets within the industrial, energy and medical industries. Gardner Denver states that its broad and

107143092.2 0066614-00019

complete range of compressor, pump, vacuum and blower products and services, along with its application expertise and over 155 years of engineering heritage, allows Gardner Denver to provide differentiated product and service offerings for its customers' specific uses. Gardner Denver has a global geographic footprint of 41 key manufacturing facilities, more than 30 complementary service and repair centers across 6 continents, and approximately 6,700 employees worldwide.

4. Defendant Sherman Engineering Company ("Sherman Engineering") is a corporation organized under the laws of the State of Pennsylvania, with its principal place of business located at 1830 County Line Road, Unit 303, Huntingdon Valley, Pennsylvania 19006, with regional offices located in New York City, Connecticut, upstate New York, and Maryland. Sherman Engineering touts itself as an employee-owned company that has been offering optimum engineered vacuum and compressed gas systems for almost 100 years. The company's website provides that its sales engineers "are able to provide on-site evaluation and sales support[.]". " https://www.shermanengineering.com/about/. Sherman Engineering further touts itself as "the regional manufacturer's representative for the most prestigious names in the air and vacuum industry." *Id.*

5. Plaintiff Olam Americas, Inc. is a corporation organized under the laws of Delaware, with authorization to conduct business in Illinois. Olam was established in 1989, and is a leading food and agribusiness, supplying a portfolio of products to over 19,800 customers who range from multinational, world famous brands to small, family run businesses. Olam is a fully integrated cocoa business and a globally leading processor of cocoa powders, cocoa masses, and cocoa butters. Olam is the world's foremost focused supplier of cocoa beans and cocoa

ingredients. Olam has a cocoa plant located at 990 Veterans Parkway, Bolingbrook, Illinois 60440.

6. Plaintiff does not currently know the true names and capacities of Defendants sued herein as DOES 1-20, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332(a) based upon complete diversity of citizenship between Olam, on the one hand, and the Defendants, on the other hand, and the fact that the amount in controversy, exclusive of costs and interest, exceeds the sum of $75,000.00.

8. This action is brought in this Court because the acts and omissions alleged herein, including the purchase of the Compressor (defined below), occurred in this District, and specifically in Bolingbrook, Illinois.

## FACTUAL ALLEGATIONS

9. In 2017, Olam became interested in purchasing an oil/lubricant free air compressor for its cocoa plant located in Bolingbrook, Illinois.

10. On or around August 1, 2017, Sherman Engineering sent a letter to Olam's Project Manager in Bolingbrook, stating that Sherman Engineering was "very interested in [Olam's] upcoming compressed air project."

11. In the August 1, 2017 letter, Sherman Engineering recommended that Olam purchase the Gardner Denver EnviroAire TVS200 Compressor (the "Compressor"), along with certain associated products, for $274,905.00.

107143092.2 0066614-00019

12. On August 7, 2017, Olam purchased the Compressor, pursuant to purchase order number 17000127 OP (the "Purchase Order"). The Compressor was shipped by Sherman Engineering from Huntingdon Valley, Pennsylvania to Olam's Cocoa Plant in Bolingbrook, Illinois. The Purchase Order reflected a total cost of $274,905.00.

13. Olam purchased the Compressor as part of a full compressed air equipment package.

14. The Compressor is an oil-free air compressor that provides air for production plants, including food and beverage manufacturing plants. Oil-free compressors are designed to minimize microbial content through high-temperature compression while reducing or eliminating the risk of product contamination for manufacturers. The life span of a compressor of this type should be more than seven years. The unit life of the Compressor purchased by Olam has roughly 6 months of service life.

15. When Olam purchased the Compressor, it came with a Standard Warranty. The Warranty provides as follows:

> Gardner Denver (the "Company") warrants to each original retail purchaser ("Purchaser") of its new products from the Company or its authorized distributor that such products are, at the time of delivery to the Purchaser, ***free of defects in material and workmanship***.
>
> …
>
> The Company's obligation under this warranty is limited to repairing or, at its option, replacing, during normal business hours at an authorized service facility of the Company, any part which in its judgment proved not to be as warranted within the applicable Warranty Period as follows. We recommend following the normal maintenance schedule as specified in the service manual and the use of genuine Gardner Denver OEM parts to ensure the long term performance and reliability of the compressor is maintained.
>
> Airend and Motor – Airends are warranted for 24 months from date of initial use or 30 months from date of shipment to the

> purchaser, whichever occurs first, Normal wearing items, such as shaft seals and inlet valve components, along with the servicing of these items is not covered under the warranty. A material or workmanship defect in these items is warrantable. Any disassembly or partial disassembly of the airend, or failure to return the "unopened" airend per Company instructions, will be cause for denial of warranty.
>
> Electric motors are warranted for 24 months from date of initial use or 30 months from date of shipment to the purchaser, whichever occurs first.
>
> Package Components – All components within the package, excluding normal wear items, are warranted for 24 months from date of initial use or 30 months from date of shipment to first purchaser, whichever occurs first.

A true and correct copy of the Gardner Denver, Inc. Standard Warranty is attached hereto as **Exhibit 1**. (Emphasis added).

16. Olam begin having problems with the Compressor in or around late 2017, with disruptions in service occurring on a frequent basis. Olam had to begin renting replacement equipment in or around January 2018. On July 30, 2018, Zorn Compressor and Equipment ("Zorn"), Gardner Denver's distribution partner, visited the Olam facility in Bolingbrook, Illinois, and replaced a breaker in the Compressor, upon request from Olam. A Zorn technician determined that the cause of the problem was a faulty breaker, so Zorn removed the old breaker, installed a new breaker along with auxiliary contact, and ran a test to ensure the equipment was working properly.

17. On August 24, 2018, Olam again called Zorn due to problems with the Compressor. This time, the problem was described as "fan failure," whereby the unit was shutting off due to issues with the performance of the fan overload component. After testing and assessment, the Zorn technician determined that the fan overload would need to be replaced on the Compressor. Zorn replaced the fan overload on or about September 24, 2018.

107143092.2 0066614-00019

18. Less than a year later, on April 1, 2019, Olam yet again called Zorn due to issues with the Compressor. Specifically, the Compressor was shutting down and was noting an error with the intake regulator component, related to where air was entering the Compressor. A Zorn technician identified the problem as an "inlet issue" and installed a new inlet and adjusted the intake regulator on the Compressor.

19. Days later, on April 3, 2019, Olam again contacted Zorn for problems with the inlet on the Compressor. A Zorn technician noted the Compressor is "shutting down on E869 intake regulator fault," so he adjusted the intake regulator "all the way in and it had no effect. After speaking with Dave at Gardner Denver, [Monteleone] found the inlet is not closing all the way when unloading." The technician noted that "Dave at Gardner Denver recommends we replace both inlet control [parts] Y1 and Y2 and the shuttle valve."

20. Olam had subsequent communications with Zorn about ongoing problems with the Compressor on or about April 24, 2019.

21. On June 3, 2019, J.W. West, a Manager at Gardner Denver, met with certain employees at Olam. At the meeting, the parties discussed concerns about the reliability of the Compressor due to the numerous problems that Olam had experienced with the Compressor, and Olam's request that Gardner Denver completely replace the defective equipment.

22. Approximately one week after the June 3, 2019 meeting, the vacuum sensor faulted again. The gearbox vacuum sensor is part of the control system of the Compressor. When it does not work, it shuts down the Compressor.

23. On June 10, 2019, Olam again contacted Zorn and noted that the vacuum sensor faulted on June 6, 2019, which made the Compressor inoperable. Olam explained in its email that

107143092.2 0066614-00019

it could not run the mill at full capacity on the small, back-up air compressor, and that the oil water separator was "at the end of its life" so Olam needed to order a new one.

24. On June 26, 2019, Olam again reached out to J.W. West at Gardner Denver and informed him that a new cable and module had been ordered in response to the problem with the vacuum sensor. The email further communicated that "the bigger issue is the general reliability of this compressor as we discussed while you were here and investigating a complete replacement." The email requested a further call to discuss replacement of the Compressor.

25. On June 28, 2019, the head of Olam's Bolingbrook plant, Jason Vogt, sent a detailed email to J.W. West at Gardner Denver regarding the ongoing reliability and performance issues with the Compressor. The email expressed Olam's willingness to work to reach a solution and requested a response no later than July 1, 2019.

26. On June 28, 2019, J.W. West at Gardner Denver replied to the email from Olam. He noted that he had followed up on the vacuum sensor parts that were ordered and advised that that 10 of the 16 parts recommended for the unit had been shipped to Zorn, and the remaining 6 parts were being expedited from Germany. Mr. West apologized for the "poor experience," and assured Olam that Gardner Denver was working on a full resolution. He stated: "When the unit arrived in Bolingbrook via Sherman Engineering, and initial start-up issues, Zorn Compressor has been leading efforts on the ground. I want to make sure everyone knows their surrogate help here hasn't failed. We have also sent Gardner Denver resources on site multiple times in the way of field service technicians as well as our oil-free engineer to monitor and diagnose. I fully acknowledge that we've struggled with repeat inlet and now vacuum sensor issues and the parts delays haven't helped our cause or your operational requirements." He added: "I am fully

confident we will put these items behind us and fulfill expectations we all have for stable and high quality oil-free system."

27. On July 1, 2019, J.W. West at Gardner Denver emailed Jason Vogt and other Olam personnel, advising he had been "working behind the scenes to get a formal response, but unfortunately [he had] not gotten all the items on [Olam's] list covered. As promised Friday night, I have escalated the situation to multiple groups in our organization and most importantly to our Director of Customer Care. We've [had] multiple cross-department conversations today as we focus on delivering the vacuum sensor parts needed. From there we've talked about how we can product long term peace of mind for your organization. I'm still waiting on updates at this hour, but I wanted to know you've been at the top of my priority list today."

28. On July 3, 2019, J.W. West emailed Jason Vogt and other Olam personnel that he was being told the final parts needed from the vacuum sensor are shipping air freight from Germany on July 5, 2019, but that he expected to have them to Zorn by July 9 or July 10, 2019.

29. On July 3, 2019, Jason Vogt responded to Mr. West's email, providing: "I'm disappointed in the responsiveness to the concern that Gardner Denver has been able to provide, it's unfortunately not consistent with the partnership that I've typically received from industrial equipment suppliers. If we've done something that is [has?] negatively impacted the equipment, I'd understand our need to take responsibility for the impact that we are experiencing on our manufacturing operations, but when the issue appears to be a manufacturers defect there are typically more responsive remedies to the issues at hand."

30. That same day, J.W. West responded, and admitted: "I completely agree that the entire situation has strung out longer than it should due to a number of variables. This started from the beginning of the project."

31. On or around July 15, 2019, Gardner Denver arrived on site with replacement parts, and installed them. For a short time, the Compressor was back in service during the week of July 15, 2019.

32. As of July 22, 2019, the Compressor was out of service yet again with the same gearbox vacuum sensor issues. A Gardner Denver representative visited the site to review the Compressor and update the team on July 24, 2019. At that meeting, the Gardner Denver representative stated that the sensor failure was due to an issue with the second stage compression unit. Gardner Denver further stated that it was going to replace the sensor again and replace the second stage compression unit, and that both items would be air-freighted from Germany to expedite the process. Olam emphasized at the time that it needed a temporary air compressor to avoid further disruption of operations in the interim. Gardner Denver failed to affirmatively respond to this request, and it did not provide an estimated time to have the parts replaced.

33. The defective Compressor has repeatedly limited Olam's ability to satisfy customers' production needs.

34. When production demands exceed the capability of the Compressor to perform, Olam has incurred significant additional expenses by renting air compressor equipment and purchasing fuel to operate the rental equipment. Prior equipment rentals, fuel, and equipment invoices demonstrate that, to date, Olam has paid approximately $149,000.00 in out of pocket expenses and Olam is continuing to incur additional expenses on a monthly basis.

107143092.2 0066614-00019

## FIRST CAUSE OF ACTION
### (Negligence)
### Against All Defendants

35. Plaintiff incorporates the allegations in Paragraphs 1 through 34 as though fully alleged herein;

36. Defendants Sherman Engineering and Gardner Denver engaged in the business of selling air compressors to Olam for installation and operation in Olam's Bolingbrook, Illinois, Cocoa Plant;

37. On or around August 7, 2017, Olam purchased a Gardner Denver EnviroAire TVS200 Compressor, along with certain associated products, for $274,905.00;

38. Defendants owed Plaintiff Olam a duty of care to ensure that the Compressor was free from defects when sold;

39. Defendants owed Plaintiff Olam a duty of care to repair and/or replace the Compressor immediately upon learning of the multiple problems with the Compressor. Indeed, Gardner Denver admitted the Compressor had design flaws;

40. Defendants breached their duty of care by (i) failing to ensure the Compressor was free from defects when sold; (ii) by failing to timely repair the Compressor; and (iii) by failing to replace the Compressor or refund Olam's purchase price for the Compressor; and

41. As the direct and proximate cause of purchasing the Compressor, Plaintiff Olam: (i) suffered damages in lost productivity while the Compressor was nonoperational; (ii) lost $274,905.00 in purchasing the defective Compressor; (iii) lost the ability to satisfy customer demand for cocoa products; and (iv) incurred approximately $149,000.00 to date renting substitute equipment.

107143092.2 0066614-00019

## SECOND CAUSE OF ACTION
### (Breach of Warranty)
### Against Defendant Gardner Denver

42. Plaintiff incorporates the allegations in Paragraphs 1 through 41 as though fully alleged herein;

43. On August 7, 2017, and at all relevant times alleged in this Complaint, Gardner Denver was engaged in the manufacture, distribution, and sale of air compressors;

44. On August 7, 2017, Plaintiff purchased the Gardner Denver Compressor;

45. On August 7, 2017, Gardner Denver provided an express warranty which provides

> Gardner Denver (the "Company") warrants to each original retail purchaser ("Purchaser") of its new products from the Company or its authorized distributor that such products are, at the time of delivery to the Purchaser, *free of defects in material and workmanship*.
>
> **Exhibit 1**. (Emphasis added.)

46. At the time of the sale of the Compressor to Plaintiff, and at the time Plaintiff used the Compressor, Gardner Denver knew, or had reason to know, that Plaintiff would rely upon Gardner Denver's skill and judgment to produce reliable air compressors;

47. At the time of the sale of the Compressor to Plaintiff, and at the time Plaintiff used the Compressor, Gardner Denver knew, or had reason to know, the Compressor was unfit for the particular purpose for which it would be used, as it contained design defects;

48. Plaintiff reasonably relied on Gardner Denver's express warranty that the Compressor would be free from defects;

49. Gardner Denver breached its express warranty because the Compressor was not free of defects as warranted;

50. Olam provided notice of the breach of warranty to Gardner Denver;

107143092.2 0066614-00019

51. As a direct and proximate result of the Gardner Denver's breach of express warranty, the Compressor failed; and

52. As the direct and proximate cause of Gardner Denver's breach of warranty, Olam: (i) suffered damages due to lost productivity while the Compressor was not operational; (ii) lost $274,905.00 in purchasing the defective Compressor; and (iii) incurred approximately $149,000 to date renting substitute equipment.

**THIRD CAUSE OF ACTION**
**(Breach of Implied Warranty)**
**Against All Defendants**

53. Plaintiff incorporates the allegations in Paragraphs 1 through 52 as though fully alleged herein;

54. On August 7, 2017, Defendants sold the Compressor to Plaintiff for $274,905.00;

55. Defendants routinely engaged in the sale of air compressors and related equipment in Illinois;

56. Defendants breached the implied warranty in that at the time of sale, the Compressor had defects and did not meet the minimum standards of quality, as evidenced by its repeated failure to operate;

57. Plaintiff, including but not limited to its employee Jason Vogt, repeatedly informed Gardner Denver, Sherman Engineering, and Zorn Compressor and Equipment of the problems with the Compressor from 2018 through to 2019; and

58. As the direct and proximate result of Defendants' breach of warranty, Plaintiff Olam: (i) suffered damages due to lost productivity while the Compressor was not operational; (ii) lost $274,905.00 in purchasing the defective Compressor; and (iii) incurred approximately $149,000 to date renting substitute equipment.

107143092.2 0066614-00019

## FOURTH CAUSE OF ACTION
### (Unjust Enrichment)
### Against All Defendants

59. Plaintiff incorporates the allegations in Paragraphs 1 through 58 as though fully alleged herein;

60. Plaintiff paid $274,905.00 for the Compressor which had a design defect and has continued to malfunction since Plaintiff purchased the Compressor on August 7, 2017;

61. The Defendants have retained the $274,905.00, unjustly retaining this benefit to the Plaintiff's detriment; and

62. Defendants' retention of this benefit violates fundamental principles of justice, equity, and good conscience.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Olam respectfully requests entry of judgment on the above-referenced causes of action in its favor and against Defendants, and each of them, as follows:

1. That Olam be awarded compensatory damages in an amount to be proven at trial;

2. That Olam be awarded $274,905.00 (the purchase amount of the Compressor), as well as all rental costs for replacement air compressors, plus any additional compensatory damages that Olam incurs through trial;

3. That Olam be awarded pre-judgment and post-judgment interest on such monetary relief;

4. That Olam be awarded exemplary and punitive damages in an amount to be proven at trial;

5. That Olam be awarded its attorney's fees and costs of suit; and

6. For any other such relief as this Court may deem just and proper.

DATED: July 2, 2020. Respectfully submitted,

/s/ B. John Casey
B. JOHN CASEY, Bar No. 6273464
Stoel Rives LLP
760 SW Ninth Ave., Ste. 3000
Portland, OR 97205
Telephone: 503-224-3380
Email: john.casey@stoel.com